Curia, per Johnston, Chancellor.
This was a case for the partition of the estate of his Excellency, the late Governor Noble. Among other things, it was ordered, that the tract of land called Bordeaux, be sold by the Commissioner of the Court. From two reports made by him of the sale, it appears that the land, was sold by the acre, and purchased for Mr. Lewis J. Patterson, by his agent, Mr. Wardlavv, at $1175 per acre, on a credit of one, two and three years, for which a bond, <fec., was to be given, in conformity to the order of sale. At the sale, the commissioner held in his hand, and exhibited a plat, made by Gibert, saying that the land was to be sold by the acre, and was represented by that plat; except that a parcel cut off by a bend of Little River, which had been sold by Gov. Noble, in his life-time, to Mr. Petigru, was not to be included. This is represented by the letter A.

*293 The land was supposed to contain 625 acres; but the Commissioner stated that a re-survey was to be made to ascertain the quantity. It having been said that some third persons claimed portions of the tract, the Commissioner replied, “ we will warrant what we convey, and- a re-survey of the place will soon be made.” The re-survey was made by Lee, and his plat was annexed to the second report of the Commissioner, by which it appears that Mo-ragne claims 16 acres, included in the curved lines at .C, and Cowan 7 3-4 acres at B ; and both claimants are in possession. It appears by the plat of Gibert, exhibited at the sale, that Bordeaux lies on Little River, an unnavigable stream, and that the exterior surveyed lines of the tract, as well as those of the smaller tracts of which it is made up, (which latter are dotted in the plat,) terminate in corners marked on the western bank of Little River, that being the side of the river on which the body of land lies. The purchaser was willing that one half of the river, at the bend opposite to Mr. Petigru’s purchase at A, should be computed into the land for which he was to give bond ; and to this the other party also agreed. But he insisted that, by the plat, under which he purchased, the lines of the tract were represented as cornering on the bank of the river; and that, therefore, the river, at all other points, was excluded from the tract, and that no part of it should be charged to him. The other party contended that he should be chargeable for one half of the river, at all points where the tract touched it. The Commissioner reported this dispute, for the direction of the Court as to the amount in which the bond was to be taken. He also reported the claims of Moragne and Cowan, in order to obtain instruction as to them. From the re-survey of Lee, it appears that if the one half of the river is charged to the purchaser, as contended for on one side, the tract contains 619 acres, (including the claims of Moragne and .Cowan,) but that if the purchaser is right 'in his view, that the river is not to be included, the land contains only 606 acres. My brother Johnson, upon hearing the reports and argument, ordered that one half the river opposite Mr. Petigm's purchase at A, should be included in the purchase of Mr. Patterson, but declared that no other part of *294 the river was included. He also passed the following order : “Ordered, that in contemplation of suits to decide the title, as to the land claimed by P. B. Moragne and Samuel Cowan, the collection of the purchaser’s bond, as to so much of the land, be delayed until the' further order of this Court.” Both véndor and purchaser have appealed. The former, on the ground that, by his purchase, the latter is bound, to pay for one half the river at all points contiguous to the land. The latter, because the heirs of Gov. Noble should sustain the suit necessary to put him in possession of the parcels of land claimed by, and in possession of, Moragne and Cowan. The order in relation to Mo-ragne’s and Cowan’s claims, was drawn up by Mr. Patterson’s counsel, and was passed in conformity to his wishes. But as it is conceded that an oversight was committed, and should be corrected, it is now ordered, by consent, that as to the 16 acres in possession of P. B. Moragne, and the 7 3-4 acres in possession of Samuel Cowan, the giving of the bond by the purchaser, be delayed until the heirs of P. Noble, by suit or otherwise, shalljremove the claims of said Moragne and Cowan, and shall put the said purchaser in peaceable possession of the parcels of land claimed by said Moragne and Cowan.
With respect to the appeal on the other point, the Court is of opinion, that it must be sustained. There is no doubt about the principle, that when a road or unnavigable water-course is called for as a boundary to a tract of land, the tract extends to the centre of the boundary so called for. On the other hand, it is not doubted that, if, as in Hatch vs. Dwight, 17 Mass. Rep, 289, there be evidence on the face of a deed or plat, of an intention to exclude the stream or road, they shall be excluded. The only question is, whether by the plat of Gibert, in reference to which the purchase was made, Little River was intended to be excluded, or merely called for as a boundary. No intention to exclude it can reasonably be inferred, from the fact that the corners were marked on trees growing on the bank. The corners were marked on the bank, of necessity. No corners could be put in the river. The surveyor stopped at the river, because he could go no further; and being arrested by the necessity of the case, there is reason *295 to conclude that the line was stopped at the river, only because it could not be extended to a corner in the stream. The river is laid down as an open line, from corner to corner; which, in fact, makes it a boundary, and carries the line to the thread of the stream, or centre of the boundary. I attach no weight to the sub-divisions laid down in the plat. They are merely representations of the several tracts of which Bordeaux is composed; and the corners of these tracts are not delineated as stations on the river line of Bordeaux, but as corners of the original parcels constituting that body of land. Striking out these division lines, Gibert’s survey exhibits a plat, with lines terminating in corners upon the bank of the river, closed with the river as a boundary. This is the common method by which a stream is called for as a boundary ; and we see no evidence of any special design to exclude any part of the river from the tract. These questions of location are always matters of evidence; and where the common method of making a river a boundary has been pursued, as in this case, we must conclude that the design was not to exclude, but to include the land to the centre or line of the river. The apparent hardship of being compelled to pay for the water, will be obviated when it is considered that the principle upon which the decision is made, is the only one which secures to the owner all the advantages of the streams contiguous to his lands, for mills, or other machinery, and for fish.
On this part of the case, it is ordered, that in executing the securities for the land purchased by Mr. Patterson, he shall be considered as having purchased one half of Little River, at all points contiguous to the land sold to him.
J. JOHNSTON.